LATHAM & WATKINS LLP
  John T. Ryan (CA Bar No. 211899)
12670 High Bluff Drive
San Diego, CA 92130
Telephone: 858-523-5400
Facsimile: 858-523-5450
Email: jake.ryan@lw.com

  Nicole C. Valco (CA Bar No. 258506)
  Amit Makker (CA Bar No. 280747)
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: 415-391-0600
Facsimile: 415-395-8095
Email: nicole.valco@lw.com
Email: amit.makker@lw.com

*Counsel for Plaintiff TGG Management Company, Inc. (dba TGG Accounting)*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TGG MANAGEMENT COMPANY, INC. (DBA TGG ACCOUNTING),<br><br>Plaintiff,<br><br>v.<br><br>JOHN PETRAGLIA; MEGAN ZERBA; SAYVA SOLUTIONS, INC.; GARRETT TAPKEN; ERIK RHOADES; BUBBLY BRANDS, LLC; SASH GROUP, INC.; and HOLIDAY FOLIAGE, INC.,<br><br>Defendants. | CASE NO. 19-cv-02007-BAS-KSC<br><br>**TGG MANAGEMENT COMPANY, INC.'S EX PARTE MOTION FOR EXPEDITED DISCOVERY**<br><br>Judge: Hon. Cynthia A. Bashant<br>Courtroom: 4B |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................... 1

II. STATEMENT OF FACTS ............................................................................. 1

III. ARGUMENT .................................................................................................. 4

    A. Legal Standards for Expedited Discovery ........................................... 4

    B. The Court Should Permit Expedited Discovery Into TGG's Claims For Its Preliminary Injunction Motion ....................... 4

        1. TGG Is Seeking a Preliminary Injunction ................................. 4

        2. TGG's Requested Discovery Is Narrowly Tailored to its Preliminary Injunction Motion .......................................... 5

        3. The Purpose of the Discovery is to Determine the Extent of Defendants' Misappropriation and the Scope of the Injunction ................................................................. 8

        4. TGG's Discovery Requests Are Not Unduly Burdensome and Will Not Prejudice Defendants ..................... 9

        5. The Timing of TGG's Requests Is Not Unreasonable ............................................................................. 9

    C. Sayva's and Holiday Foliage's Proposal Is Unworkable ................... 9

IV. CONCLUSION ............................................................................................. 10

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Apple Inc. v. Samsung Elecs. Co.*,
 No. 11-CV-01846-LHK,
 2011 WL 1938154 (N.D. Cal. May 18, 2011) ....................................................... 8

*Citizens for Quality Educ. San Diego v. San Diego Unified Sch. Dist.*,
 No. 17-cv-1054-BAS-JMA,
 2018 WL 1150836 (S.D. Cal. Mar. 5, 2018) ......................................................... 5

*Fuhu, Inc. v. Toys "R" Us, Inc.*,
 No. 12-CV-2308-WQH (WVG),
 2012 WL 12870313 (S.D. Cal. Oct. 4, 2012) ....................................................... 4

*Hardie v. Nat'l Collegiate Athletic Ass'n*,
 No. 13cv346-W (DHB),
 2013 WL 1399333 (S.D. Cal. Apr. 5, 2013) ......................................................... 8

*Light Salt Invs., LP v. Fisher*,
 No. 13cv1158-MMA (DHB),
 2013 WL 3205918 (S.D. Cal. June 24, 2013) .................................................. 4, 9

*Palermo v. Underground Sols., Inc.*,
 No. 12cv1223-WQH (BLM),
 2012 WL 2106228 (S.D. Cal. June 11, 2012) ....................................................... 4

*Semitool, Inc. v. Tokyo Electron Am., Inc.*,
 208 F.R.D. 273 (N.D. Cal. 2002) ..................................................................... 4, 8

*Trulite Glass & Aluminum Sols., LLC v. Smith*,
 No. 2:16-01798-cv-JAM-CKD,
 2016 WL 8738432 (E.D. Cal. Aug. 10, 2016) ...................................................... 9

**STATUTES**

18 U.S.C. § 1839(5) .................................................................................................. 7

Cal. Civ. Code § 3426.1(b) ....................................................................................... 7

# RULES

Fed. R. Civ. P. 26(d) ................................................................................................ 5

Fed. R. Civ. P. 26(f) ............................................................................................. 4, 5

## I. INTRODUCTION

Two employees, John Petraglia and Megan Zerba, left TGG Management Company, Inc., one after the other, with offers to start a competing accounting division for Sayva Solutions, Inc. Unknown to TGG at the time, the two employees copied numerous trade secrets onto external storage drives, personal email accounts, and Dropbox, and conspired to steal a number of TGG's clients in the process. The trade secrets copied come from all over TGG's business and include proprietary accounting workbooks with embedded software code and formulas, customer lists, sales and marketing documents, and training materials. But the employees were sloppy in their theft, and once TGG discovered the situation, a forensic analysis and review of the employees' TGG email accounts confirmed that the trade secrets were indeed copied by the two employees. The email review also revealed that two other former employees and several of TGG's former clients received TGG's trade secrets from Petraglia and Zerba. These analyses provided TGG with some limited information related to these employees' theft of TGG's trade secrets, but early discovery will allow TGG to present its full case to the Court as to why a preliminary injunction must be entered. Thus, TGG seeks expedited discovery to complete the record for its preliminary injunction motion. The Court should grant TGG's motion.

## II. STATEMENT OF FACTS

A more complete statement of the facts is set forth in TGG Management Company, Inc.'s (dba TGG Accounting) ("TGG") motion for a preliminary injunction. (*See* Dkt. 22; Dkt. 23 at 1-12.) TGG incorporates by reference that discussion here, but provides factual detail below directly relevant to its motion for expedited discovery.

Plaintiff TGG is a leading provider of management accounting and business advisory services for small to mid-size business clients across industries. As a fully scalable accounting and finance team, TGG works as an extension of its clients' businesses, tailoring its services to fit their specific needs. To provide these services,

1

CASE NO. 19-CV-02007-BAS-KSC
TGG'S EX PARTE MOTION FOR EXPEDITED DISCOVERY

TGG has developed numerous trade secrets over the years that allow it to provide better quality and more efficient services to its clients.

Over the course of the past few months, TGG discovered that John Petraglia ("Petraglia") and Megan Zerba ("Zerba") had apparently planned to go to a competitor called Sayva Solutions, Inc. ("Sayva") and steal TGG clients in the process. (Compl. ¶ 2.) TGG also discovered that Petraglia and Zerba are still using TGG's confidential, proprietary, and trade secret information at their new jobs at Sayva. (*Id.* ¶¶ 3, 34, 63-65.) After learning this, TGG hired the Berkeley Research Group ("BRG") to conduct a forensic analysis of Petraglia's and Zerba's TGG laptops after their departures from TGG. (*Id.* ¶¶ 5, 40-62.) This forensic analysis establishes that both Petraglia and Zerba connected external USB storage devices to their TGG laptop computers and copied TGG proprietary, confidential, and trade secret information onto those storage devices prior to departing TGG to start a competing accounting practice with a new competitor. (*Id.* ¶¶ 40-62.) The trade secrets copied come from all over TGG's business and include proprietary accounting workbooks with embedded software code and formulas, customer lists, sales and marketing documents, and training materials. (*See, e.g.*, *id.* ¶¶ 3, 35, 41, 43-50, 52, 57, 67, 88.) Just one of the files that Petraglia took, called the QuickBooks Accounting File (or .QBB file) was 890 MB. (*Id.* at ¶ 65.) The forensic analysis also establishes that Zerba accessed personal cloud storage accounts and placed TGG proprietary, confidential, and trade secret information in those cloud storage accounts. (*Id.* ¶ 59.) It appears that Zerba uploaded or saved over 70 files including TGG confidential, proprietary, and trade secret information to her Dropbox cloud storage account. An analysis of Petraglia's and Zerba's TGG email accounts also established that they forwarded additional TGG proprietary, confidential, and trade secret information to their own and others' personal email accounts. (*Id.* ¶¶ 49-54, 60, 62.) In the months leading up to his departure, Petraglia emailed himself at least 100 times, attaching at least 70 documents, including for example, TGG proprietary

templates and workbooks, training materials, an employee Utilization Report, memoranda, and information regarding various clients. (*Id.* ¶ 49.) Likewise, Zerba emailed Petraglia TGG proprietary workbooks to Petraglia's personal email account.

      The information that TGG has been able to discover through these analyses demonstrates that Petraglia and Zerba sought out and misappropriated TGG's proprietary, confidential, and trade secret information to use at Sayva. (*Id.* ¶ 3.) It further demonstrates that Petraglia and Zerba have continued to use TGG's proprietary, confidential, and trade secret information at Savya, including while working with TGG's now-former clients Sash Bag, Holiday Foliage, and Bubbly Brands. (*Id.* ¶¶ 63-65.) For example, months after Petraglia and Zerba left TGG, former client Holiday Foliage sent an email to Petraglia's old TGG email account asking Petraglia to review attached financial statements—financial statements that included TGG's trade secret formulas and computer code. (*Id.* ¶ 64.) Petraglia and Zerba also shared TGG's proprietary, confidential, and trade secret information with two other former TGG employees, Garrett Tapken and Erik Rhoades, to facilitate their work with TGG's former clients. (*Id.* ¶¶ 53-54, 62.) This misappropriation and sharing appears to be just the tip of the iceberg of Petraglia and Zerba's scheme to steal the trade secrets that TGG has spent 13 years and millions of dollars to develop. (*Id.* ¶ 1.) Because Petraglia and Zerba concealed their efforts to steal TGG's trade secrets, TGG was unaware of this scheme when Petraglia and Zerba initially left TGG, and through normal procedures, TGG had initiated processes to clean Petraglia's TGG laptop so that it could be repurposed within TGG. Some of these processes occurred prior to the forensic analysis mentioned above. (Dkt. 23-1, Garrett Decl. ¶ 63.) As such, the forensic analysis was likely not as complete as it could have been.

## III. ARGUMENT

### A. Legal Standards for Expedited Discovery

Courts in the Ninth Circuit apply the "good cause" standard in deciding whether to permit expedited discovery before the Rule 26(f) conference. *See Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275-76 (N.D. Cal. 2002). Good cause exists "where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice of the responding party." *Id.* at 276. Courts may consider the following factors in deciding whether good cause exists: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Light Salt Invs., LP v. Fisher*, No. 13cv1158-MMA (DHB), 2013 WL 3205918, at *1 (S.D. Cal. June 24, 2013) (citations and quotation omitted). Expedited discovery should be granted when the discovery requested is reasonable in light of all the surrounding circumstances. *Fuhu, Inc. v. Toys "R" Us, Inc.*, No. 12-CV-2308-WQH (WVG), 2012 WL 12870313, at *3 (S.D. Cal. Oct. 4, 2012).

### B. The Court Should Permit Expedited Discovery Into TGG's Claims For Its Preliminary Injunction Motion

TGG requests that the Court permit limited discovery in advance of the hearing on TGG's motion for preliminary injunction. Here, all of the factors support TGG's request for expedited discovery, and TGG's discovery requests are reasonable because Defendants have misappropriated TGG's trade secrets and are now using them in direct competition against TGG. Good cause exists for expedited discovery for the reasons set forth below.

#### 1. TGG Is Seeking a Preliminary Injunction

"[C]ourts often permit expedited discovery designed to obtain information required for [a] preliminary injunction." *Palermo v. Underground Sols., Inc.*, No.

12cv1223-WQH (BLM), 2012 WL 2106228, at *2 (S.D. Cal. June 11, 2012) (citation omitted); *see also* Advisory Committee Notes to the 1993 amendments to Rule 26(d) (Discovery before the Rule 26(f) conference "will be appropriate in some cases, such as those involving requests for a preliminary injunction").

TGG has filed a motion for preliminary injunction to prevent further misappropriation and use of its trade secrets by Defendants. The narrowly tailored discovery outlined in the following section "would better enable the court to judge the parties' interests and respective chances for success on the merits" at the preliminary injunction hearing. *Citizens for Quality Educ. San Diego v. San Diego Unified Sch. Dist.*, No. 17-cv-1054-BAS-JMA, 2018 WL 1150836, at *2 (S.D. Cal. Mar. 5, 2018) (internal quotation omitted). Thus, this factor favors permitting expedited discovery.

### 2. TGG's Requested Discovery Is Narrowly Tailored to its Preliminary Injunction Motion

At this juncture, TGG only requests expedited discovery into matters directly relevant to its preliminary injunction motion. TGG's discovery requests encompass only matters that will help the parties and Court prepare for the preliminary injunction hearing.

**Requests for Production and Inspection**

- All external drives used by Petraglia or Zerba to remove files from TGG's systems, including but not limited to the PNY USB 2.0 FD USB device (serial number 070A8A47C6DFC895&0) used by Petraglia and the Generic Flash Disk USB Device (serial number 5DF82F6A&0) used by Zerba. Petraglia and Zerba shall not access or otherwise modify the contents of the external drives prior to production.

- All copies of all documents stored in Petraglia's or Zerba's Dropbox accounts relating to TGG, including but not limited to the documents

identified in the Declaration of David Jimenez filed with TGG's motion for preliminary injunction (Dkt. 22; Dkt. 23-24).

- All copies of all documents, files, programs, or other materials that Petraglia or Zerba copied or took from TGG from December 1, 2018 to present, including all copies of TGG documents that Petraglia or Zerba sent to or received on personal email accounts or Sayva email accounts.
- All copies of all documents, files, programs, or other materials that Tapken copied or took from TGG, or received from Petraglia or Zerba, from December 1, 2018 to present.
- All copies of all documents, files, programs, or other materials that Rhoades copied or took from TGG, or received from Petraglia or Zerba from November 1, 2018 to present.
- Copies of all Sayva documents relating to any TGG documents, files, programs, or other materials or information in Sayva's possession, including relating to any use of those materials or information.
- Copies of all Sash Bag, Holiday Foliage, and Bubbly Brands documents relating to any TGG documents, files, programs, or other materials or information created, modified, or sent or in their possession after they disengaged from TGG, including relating to any use of those materials or information.

**Limited Depositions**

- No more than 3 hours of deposition of Petraglia, with questions limited to Petraglia's misappropriation and misuse of TGG's confidential, proprietary, and trade secret information since January 2019. These 3 hours do not count against any subsequent deposition or discovery limits agreed to by the parties or set by the Court.
- No more than 3 hours of deposition of Zerba, with questions limited to Zerba's misappropriation and misuse of TGG's confidential, proprietary,

and trade secret information since April 2019. These 3 hours do not count against any subsequent deposition or discovery limits agreed to by the parties or set by the Court.

- No more than 2 hours of deposition of Tapken, with questions limited to Tapken's misappropriation and misuse of TGG's confidential, proprietary, and trade secret information since December 2018. These 2 hours do not count against any subsequent deposition or discovery limits agreed to by the parties or set by the Court.

- No more than 2 hours of deposition of Rhoades, with questions limited to Rhoades's misappropriation and misuse of TGG's confidential, proprietary, and trade secret information since April 2019. These 2 hours do not count against any subsequent deposition or discovery limits agreed to by the parties or set by the Court.

- No more than 3 hours of deposition of a 30(b)(6) corporate representative of Sayva, with questions limited to Sayva's possession and use of any files that Petraglia or Zerba took from TGG. These 3 hours do not count against any subsequent deposition or discovery limits agreed to by the parties or set by the Court.

- No more than 2 hours of deposition of a 30(b)(6) corporate representative from each of Sash Bag, Holiday Foliage, and Bubbly Brands, with questions limited to possession and use of any files from TGG since they disengaged from TGG. These 2 hours do not count against any subsequent deposition or discovery limits agreed to by the parties or set by the Court.

The requested discovery is narrowly tailored to the issue at hand: Defendants' acquisition and misuse of TGG's trade secret information through improper means. *See* 18 U.S.C. § 1839(5); Cal. Civ. Code § 3426.1(b). TGG's requests for production are tailored to confirm TGG's forensic analysis and determine what else was taken by Defendants and how it has been used. The limited depositions will

allow TGG to confirm the scope of the misappropriation, including that Defendants are currently using TGG's trade secrets. The full extent of Defendants' misappropriation and use of TGG's trade secrets is only within Defendants' knowledge. These matters go directly to TGG's arguments in support of its preliminary injunction motion regarding its success on the merits, the irreparable harm that it is suffering, and the scope of the injunctive relief. TGG does not seek irrelevant discovery or discovery into other matters relevant to its claims that are not immediately tied to its preliminary injunction motion. Rather, the requested discovery is limited to relevant evidence that supports TGG's preliminary injunction motion, will assist the Court in resolving that motion, and will inevitably be produced in the litigation in any event. *See, e.g.*, *Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2011 WL 1938154, at *2 (N.D. Cal. May 18, 2011); *Semitool*, 208 F.R.D. at 276 (expedited discovery proper where "the requested information is relevant and will be produced in the normal course of discovery"); *Hardie v. Nat'l Collegiate Athletic Ass'n*, No. 13cv346-W (DHB), 2013 WL 1399333, at *2 (S.D. Cal. Apr. 5, 2013) (expedited discovery proper where "the information sought is relevant to the pending motion for preliminary injunction and is likely to assist the Court in resolving the motion").

### 3. The Purpose of the Discovery is to Determine the Extent of Defendants' Misappropriation and the Scope of the Injunction

As set forth in its motion for preliminary injunction, TGG has and continues to suffer irreparable harm in light of the theft of its trade secrets. The only purpose of TGG's requested discovery is to allow more facts directly related to its preliminary injunction motion to come to light in advance of the hearing. Courts have found that this is a proper purpose for expedited discovery when the discovery will assist the court in resolving the motion. *See, e.g.*, *Hardie*, 2013 WL 1399333, at *2 (ordering expedited discovery and noting as to third factor the discovery "is

likely to assist the Court in resolving the [preliminary injunction] motion); *Light Salt*, 2013 WL 3205918, at *2 (ordering expedited discovery and noting as to third factor, "Plaintiff has shown that it needs the depositions . . . to support its contemplated motion for preliminary injunction").

### 4. TGG's Discovery Requests Are Not Unduly Burdensome and Will Not Prejudice Defendants

Defendants cannot claim any real burden from the very limited discovery TGG requests at this time. This merely amounts to turning back over the files that Petraglia and Zerba took from TGG, and any evidence of their use at Sayva and TGG's former clients that are now working with Sayva. If there is any burden, it could only be in the pervasiveness of the use, which should not be a valid reason to claim burden. Moreover, one early deposition per Defendant, each of which is limited in time, is not burdensome. *See, e.g.*, *Light Salt*, 2013 WL 3205918, at *2 ("Fourth, the Court finds that permitting Plaintiff to conduct two depositions will not impose an unreasonable burden on Defendants."); *Trulite Glass & Aluminum Sols., LLC v. Smith*, No. 2:16-01798-cv-JAM-CKD, 2016 WL 8738432, at *1 (E.D. Cal. Aug. 10, 2016) (allowing individual depositions of no more than three hours for five individuals and one company defendant).

### 5. The Timing of TGG's Requests Is Not Unreasonable

Although TGG's requests are made in advance of the formal start of discovery, because the requests are narrowly tailored to the issues relevant to the preliminary injunction motion, this advanced timing should not prevent the Court from permitting expedited discovery. *See, e.g.*, *Light Salt*, 2013 WL 3205918, at *2.

### C. Sayva's and Holiday Foliage's Proposal Is Unworkable

In the meet and confer process regarding this motion, counsel for Sayva and Holiday Foliage asserted that expedited discovery was unnecessary, but suggested that early depositions of any parties count against discovery limits and that no further depositions of a party would be allowed. (Valco Decl. ¶ 3.) This approach is

unworkable and would require TGG to sacrifice full and fair discovery of Defendants to be able to take some limited expedited discovery for purposes of its preliminary injunction motion.

As explained above, the purpose of the expedited discovery is to support TGG's motion for preliminary injunction—to determine the scope of the misappropriation and scope of appropriate relief. Refusing to provide early discovery into Sayva or Holiday Foliage documents relating to TGG materials directly subverts the purpose of the expedited discovery and undermines TGG's ability to cross-examine their witnesses using the documents. Moreover, Sayva and Holiday Foliage would then cut TGG off from any further party depositions once those documents are later produced. Sayva and Holiday Foliage's proposal is a non-starter for these reasons. To suggest that these early depositions—which are meant simply to aid the Court and the parties in assessing TGG's motion for preliminary injunction—should count against discovery limits would severely hamper TGG's ability to prepare its case on all of its claims with the aid of full discovery into Sayva's and Holiday Foliage's documents.

Sayva and Holiday Foliage's proposed approach would waste the parties' time and would likely not illuminate anything for purposes of TGG's motion for preliminary injunction. Instead, the Court should grant TGG's motion for expedited discovery.

**IV.   CONCLUSION**

For the reasons set forth above, the Court should grant TGG's motion for expedited discovery.

| | | |
|---|---|---|
| 1 | Dated: November 12, 2019 | LATHAM & WATKINS LLP |
| 2 | | By: s/ Nicole C. Valco |
| 3 | | |
| 4 | | John T. Ryan<br>LATHAM & WATKINS LLP |
| 5 | | 12670 High Bluff Drive |
| 6 | | San Diego, CA 92130<br>Telephone:  858-523-5400 |
| 7 | | Facsimile:  858-523-5450<br>Email: jake.ryan@lw.com |
| 8 | | |
| 9 | | Nicole C. Valco |
| 10 | | Amit Makker<br>LATHAM & WATKINS LLP |
| 11 | | 505 Montgomery Street |
| 12 | | Suite 2000<br>San Francisco, CA 94111 |
| 13 | | Telephone: 415-391-0600 |
| 14 | | Facsimile: 415-395-8095<br>Email: nicole.valco@lw.com |
| 15 | | Email: amit.makker@lw.com |
| 16 | | |
| 17 | | *Counsel for Plaintiff TGG Management Company, Inc. (dba TGG Accounting)* |