UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TGG MANAGEMENT COMPANY INC. (dba TGG ACCOUNTING),<br><br>Plaintiff,<br><br>v.<br><br>JOHN PETRAGLIA, *et al.*,<br><br>Defendants. | Case No. 19-cv-2007-BAS-KSC<br><br>**ORDER GRANTING IN PART PLAINTIFF'S EX PARTE MOTION FOR EXPEDITED DISCOVERY**<br><br>**[ECF No. 42]** |

Plaintiff TGG Management Company, Inc. ("TGG") filed a complaint against eight Defendants: John Petraglia, Megan Zerba, Garrett Tapken, Erik Rhoades, Sayva Solutions, Inc., Bubbly Brands, LLC, Sash Group, Inc., and Holiday Foliage, Inc. TGG alleges, inter alia, trade secret misappropriation. Soon after filing its complaint, TGG filed a motion for preliminary injunction, requesting the Court enjoin Defendants from using its trade secret information. (ECF No. 23.) Along with the motion, TGG also moves ex parte for expedited discovery. ("Ex Parte Mot.," ECF No. 24.) The Court invited any Defendant to file an opposition to the ex parte motion. Various Defendants oppose the motion. (ECF Nos. 44–47.)

For the reasons set forth below, the Court **GRANTS IN PART** TGG's ex parte motion for expedited discovery. The permitted discovery is detailed below.

## I. BACKGROUND

Plaintiff TGG provides management accounting and business advisory services for business clients. ("PI Mot.," ECF No. 23, at 1.) TGG was founded in 2006 by its current CEO Matt Garrett. Over time, Mr. Garrett and others developed what they call "The TGG Way"— "a proven set of accounting and finance best practices, processes and procedures, specially designed electronic tools, and other trade secrets, coupled with financial guidance, to ensure the financial health and success of TGG's clients." (Garrett Decl., ECF No. 23-1, ¶ 9.) The TGG Way "uses an objective and measurable system for implementing accounting best practices, quality control, and client and team communications. It is at the center of TGG's brand, and is what differentiates TGG from its competition." (PI Mot. at 4.) The TGG Way and TGG's trade secrets give TGG a competitive advantage. (*Id.*)

Defendant John Petraglia began working for TGG in January 2016. (Garrett Decl. ¶ 41.) By virtue of his role, Petraglia had access to some of TGG's confidential trade secret information. Petraglia left TGG in April 2019 and began working for Defendant Sayva Solutions, Inc. (*Id.* ¶¶ 43, 45.) Similarly, Defendant Megan Zerba began working for TGG in June 2013, had access to trade secret information while at TGG, and now also works for Sayva Solutions. Upon their departure, both Petraglia and Zerba refused to sign TGG's Reminder of Confidentiality and Nonsolicitation form. (*Id.* ¶¶ 44, 48.) Petraglia is listed as the current CFO of Sayva and Zerba is listed as the Controller. (*Id.* ¶ 8.) "Sayva provides outsourced professional services such as accounting, specialized project consulting, and full-time recruiting services." (PI Mot. at 3.) TGG alleges that as a result of Petraglia and Zerba's actions, Sayva has built an accounting division that directly competes with TGG. (*Id.*)

After Petraglia and Zerba left, TGG hired the Berkeley Research Group to conduct a forensic analysis of Petraglia's and Zerba's TGG-issued laptops. (Garrett Decl. ¶ 62.) David Jiminez of Berkeley concluded that before he left TGG, Petraglia

connected a personal external USB storage device to his TGG laptop computer and accessed various files. (Jiminez Decl., ECF No. 23-24 ¶ 12.) TGG analyzed the list of files Petraglia accessed and concludes, "[t]he files . . . are sweeping and include many of TGG's most valuable assets and proprietary trade secrets." (PI Mot. at 10.) Petraglia also emailed himself various TGG materials. (*Id.*) Zerba also copied various TGG files onto a personal USB storage device before leaving TGG. (Jiminez Decl. ¶ 14.)[1]

As to the other Defendants, Defendant Garrett Tapken also worked for TGG and now works for TGG's former client, Tosdal law Firm. (Garrett Decl. ¶¶ 50–53.) Defendant Erik Rhoades previously worked for TGG and now works for a different outsourced professional services provider, Pro Back Office. (*Id.* ¶¶ 54–57.) Bubbly Brands, Sash Group, and Holiday Foliage are former clients of TGG. After Petraglia and Zerba left TGG, these former clients began disengagement from TGG. TGG believes the entities are working with Petraglia and Zerba, who are likely using TGG's trade secrets to perform accounting services.

TGG moves for a preliminary injunction on its claims brought pursuant to the Defend Trade Secrets Act ("DTSA"), California Uniform Trade Secrets Act ("CUTSA"), Computer Fraud and Abuse Act ("CFAA"), and Computer Data Access and Fraud Act ("CDAFA"). Before the Court may resolve TGG's preliminary injunction motion, it must resolve TGG's motion for expedited discovery

## II. LEGAL STANDARD

Rule 26(d) of the Federal Rules of Civil Procedure generally provides that formal discovery will not commence until after the parties have conferred as required

---

[1] TGG claims that Berkeley's forensic analysis shows only some of the information the former employees took. (Ex Parte Mot. at 3.) This is because when Petraglia and Zerba initially left TGG, and through normal procedures, TGG began cleaning Petraglia's TGG laptop so that it could be repurposed. Some of this process occurred prior to the forensic analysis. (*Id.*) Therefore, TGG claims the forensic analysis may not reveal all information the former employees took.

by Rule 26(f). Fed. R. Civ. P. 26(d)(1). Courts may permit expedited discovery before the Rule 26(f) conference upon a showing of good cause. *See Apple Inc. v. Samsung Elecs. Co.*, 768 F. Supp. 2d 1040, 1044 (N.D. Cal. 2011). "Expedited discovery is not the norm" and, therefore, the moving party "must make some *prima facie* showing of the *need* for the expedited discovery." *Merrill Lynch, Pierce, Fenner & Smith v. O'Connor*, 194 F.R.D. 618, 623 (N.D. Ill. 2000). Good cause exists when the need for expedited discovery, in consideration with the administration of justice, outweighs the prejudice to the responding party. *See Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1066 (C.D. Cal. 2009).

The good cause standard may be satisfied when a party seeks a preliminary injunction. *Id.* In the context of a pending preliminary injunction motion, expedited discovery may be ordered if it would "better enable the court to judge the parties' interests and respective chances for success on the merits at a preliminary injunction hearing." *Yokohama Tire Corp. v. Dealers Tire Supply, Inc.*, 202 F.R.D. 612, 613 (D. Ariz. 2001). But the mere fact that a party has moved for a preliminary injunction does not entitle the party to receive expedited discovery. Any discovery sought for a preliminary injunction must be evaluated against the purpose of a preliminary injunction, i.e., to preserve the status quo. *Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 234 F.R.D. 4, 7 (D.D.C. 2006). A court should examine the requested discovery based on the entirety of the record and the reasonableness of the request in light of all surrounding circumstances. *Am. LegalNet, Inc.*, 673 F. Supp. 2d at 1067, *Merrill Lynch*, 194 F.R.D. at 624. Courts examine the reasonableness of the request by considering a non-exhaustive set of factors: (1) whether a preliminary injunction is pending, (2) the breadth of the discovery requests, (3) the purpose for requesting the expedited discovery, (4) the burden on the defendant of compliance with the requested discovery, and (5) how far in advance of the typical discovery process the request was made. *Am. LegalNet, Inc.*, 673 F. Supp. 2d at 1067 (quoting *Disability Rights Council*, 234 F.R.D. at 6).

A court may deny a motion for expedited discovery if a moving party seeks discovery that is not narrowly tailored to obtain information relevant to a preliminary injunction determination and instead goes to the merits of the party's claims. *Am. LegalNet, Inc.*, 673 F. Supp. 2d at 1069; *see also Profil Institut Fur Stoffwechselforschung GbmH v. Profil Inst. for Clinical Research*, No. 16-cv-2762-LAB-BLM, 2016 WL 7325466, at *4 (S.D. Cal. Dec. 16, 2016). A court may save an otherwise impermissibly overbroad or burdensome expedited discovery request by excising the offending aspects of the discovery request. *See Roadrunner Intermodal Servs., LLC v. T.G.S. Transp., Inc.*, No. 17-cv-01056-DAD-BAM, 2017 WL 3783017, at *3 (E.D. Cal. Aug. 31, 2017).

## III. ANALYSIS

### A. Discovery Sought by TGG

TGG seeks discovery that it claims is directly relevant to its preliminary injunction motion. It seeks:

- All external drives used by Petraglia or Zerba to remove files from TGG's systems
- All copies of all documents stored in Petraglia's or Zerba's Dropbox accounts relating to TGG
- All copies of all documents, files, programs, or other materials that Petraglia or Zerba copied or took from TGG from December 1, 2018 to present, including all copies of TGG documents that Petraglia or Zerba sent to or received on personal email accounts or Sayva email accounts
- All documents, files, programs, or other materials that Tapken and Rhoades copied or took from TGG, or received from Petraglia or Zerba, from December 1, 2018 to present
- Copies of all Sayva documents relating to any TGG documents, files programs, or other materials or information in Sayva's possession, including relating to any use of those materials or information.
- Copies of all Sash Bag, Holiday Foliage, and Bubbly Brands document relating to any TGG documents, files, programs, or other materials or information created, modified, or sent or in their possession after the disengaged from TGG, including relating to any use of those materials or information.

(Ex Parte Mot. at 6.)

TGG also seeks to take a no more than 3-hour deposition of Petraglia, Zerba, and a 30(b)(6) corporate representative of Sayva. TGG further seeks to a take a no more than 2-hour deposition of Tapken, Rhoades, and a 30(b)(6) corporate representatives of Sash Bag, Holiday Foliage, and Bubbly Brands. (*Id.* at 7.) These depositions are to "allow TGG to confirm the scope of the misappropriation" and to confirm that "Defendants are currently using TGG's trade secrets." (*Id.* at 8.)

### B. Discussion

One of Defendants' main arguments in opposition to the motion for expedited discovery is that the discovery requests are not narrowly tailored to the preliminary injunction and instead, the information sought goes to the merits of the case.

As to the allegations against Petraglia and Zerba, it is clear to the Court that TGG has more information regarding the alleged misappropriation than most other plaintiffs have in other cases at this stage. TGG has already hired a forensic analysis company to review Petraglia's and Zerba's laptops. (Garrett Decl. ¶ 62.) TGG can point to at least some of the files that the two employees accessed, copied, and/or emailed to themselves. (*Id.* ¶¶ 63–79, 83–84.) The fact that the list of documents may not be complete, or the fact that TGG may not know exactly how this information is being used, are issues that go to the merits of this case.

But the evidence that TGG claims to have as to the other Defendants is less conclusive. TGG only states it has proof that Rhoades is in possession of some confidential information. (*Id.* ¶ 84.) And TGG only knows that Tapken has communicated with Petraglia regarding a former client's financial, tax and billing information. (*Id.* ¶ 82.) TGG is also unaware if the entity Defendants (Sayva Solutions, Bubbly Brands, Sash Group, or Holiday Foliage) are in possession of any confidential information by virtue of their relationships with TGG's former employees. The Court finds there is good cause to permit some discovery as it relates to Tapken, Rhoades, and the entity Defendants.

The entity Defendants next argue that even if the Court permits some

discovery, the discovery requests are overbroad. Bubbly Brands, a former client of TGG, points out that TGG and Bubbly Brands often exchanged information during the course of their relationship regarding Bubbly Brands' own financial data. A discovery request for all documents that involve the two parties would require Bubbly Brands "to produce back to TGG the same documents TGG provided during the relationship." (*See* BB Opp'n, ECF No. 47, at 2.) The Court finds that one small change to the proposed discovery request will resolve this problem. As drafted currently, TGG's request for document production specifies that the entity Defendants are to produce any TGG documents or information "created, modified, or sent or in their possession after they disengaged from TGG, including relating to any use of those materials or information." (Ex Parte Mot. at 6.) A document request for all TGG documents simply "in the possession" of the former client may indeed lead to production of documents regarding the client's financial data created during the client's relationship with TGG. Therefore, the Court modifies the request as follows:

> Copies of all Sash Bag documents relating to any TGG documents, files, programs, or other materials or information created, modified, sent, or used after Sash Bag disengaged from TGG, including relating to any use of those materials or information.

(*See id.*) The requests for Holiday Foliage and Bubbly Brands will be identical.

In sum, the Court finds that any discovery seeking further information as to what documents Petraglia or Zerba removed from TGG goes to the merits of the case. There is no good cause to permit such discovery. However, discovery relating to what TGG documents, if any, Tapken and Rhoades have in their possession is relevant and the Court finds good cause to permit this discovery. Further, there is good cause for TGG to determine what information, if any, is in the possession of Sayva, Sash Bag, Holiday Foliage, and Bubbly Brands. The Court finds such discovery would better enable it to "judge the parties' interests and respective

chances for success on the merits at a preliminary injunction hearing." *Yokohama Tire Corp.*, 202 F.R.D. at, 613.[2]

Further, the Court does not find good cause to allow depositions at this time. TGG states the depositions are to "allow TGG to confirm the scope of the misappropriation" and to affirm its belief that "Defendants are currently using TGG's trade secrets." (Ex Parte Mot. at 8.) Determining just how much confidential material has been misappropriated and the current use of the material does not relate to the preliminary injunction, instead, it relates to the merits of the case. Therefore, the Court declines to allow expedited discovery for depositions at this time.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** TGG's motion for expedited discovery. (ECF No. 24.) TGG may engage in expedited discovery for the following requests for production and inspection:

- All copies of all documents, files, programs, or other materials that Tapken copied or took from TGG, or received from Petraglia or Zerba, from December 1, 2018 to present.

- All copies of all documents, files, programs, or other materials that Rhoades copied or took from TGG, or received from Petraglia or Zerba, from November 1, 2018 to present.

---

[2] Finally, Defendant Sayva points out that it has made efforts to remedy any use of confidential information. Sayva has hired a company called iDiscovery Solutions "to conduct the forensic investigation and the remediation of all TGG documents that may have migrated" to Sayva from the hiring of Petraglia or Zerba. (Sayva Opp'n, ECF No. 44, at 6.) iDiscovery Solutions has preserved all TGG documents. (*Id.*) TGG's counsel has been fully briefed on the scope of iDiscovery Solutions' efforts. (*Id.*)

The Court commends the parties for working together to determine what information Sayva received through its hiring of Petraglia and Zerba. But this does not mean there is not good cause to permit limited discovery. In fact, the discovery request likely will not be overly burdensome on Sayva considering the company has already compiled the documents and has been forthcoming with TGG regarding its efforts thus far.

- Copies of all Sayva documents relating to any TGG documents, files, programs, or other materials or information in Sayva's possession, including relating to any use of those materials or information.
- Copies of all Sash Bag documents relating to any TGG documents, files, programs, or other materials or information created, modified, sent, or used after Sash Bag disengaged from TGG, including relating to any use of those materials or information.
- Copies of all Holiday Foliage documents relating to any TGG documents, files, programs, or other materials or information created, modified, sent, or used after Holiday Foliage disengaged from TGG, including relating to any use of those materials or information.
- Copies of all Bubbly Brands documents relating to any TGG documents, files, programs, or other materials or information created, modified, sent, or used after Bubbly Brands disengaged from TGG, including relating to any use of those materials or information.

(*See* Ex Parte Mot. at 6.) The Court denies without prejudice the remainder of TGG's requests for expedited discovery as it relates to document production. The Court also denies without prejudice TGG's requests for expedited discovery as it relates to depositions. (*See id.*)

Further, the parties disagree as to whether the permitted discovery will "count against" the limits of discovery conducted later the normal scope of the case. If this issue arises, the parties are to resolve the issue with Magistrate Judge Crawford. Finally, any issues regarding the scope of or any objections to the discovery permitted herein are to be referred to Magistrate Judge Crawford.

**IT IS SO ORDERED.**

**DATED: November 25, 2019**

Hon. Cynthia Bashant
United States District Judge