UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TGG MANAGEMENT COMPANY INC. (dba TGG ACCOUNTING),<br><br>                              Plaintiff,<br><br>      v.<br><br>JOHN PETRAGLIA, *et al.*,<br><br>                              Defendants. | Case No. 19-cv-2007-BAS-KSC<br><br>**ORDER:**<br>**(1) GRANTING BUBBLY BRANDS' MOTION TO DISMISS; AND**<br>**(2) GRANTING SASH GROUP'S MOTION TO DISMISS**<br><br>**[ECF Nos. 65, 69]** |

Plaintiff TGG Management Company, Inc. ("TGG") filed a complaint against eight Defendants: John Petraglia; Megan Zerba; Garrett Tapken; Erik Rhoades; Sayva Solutions, Inc.; Bubbly Brands, LLC; Sash Group, Inc.; and Holiday Foliage, Inc. ("Compl.," ECF No. 1.)  TGG alleges, inter alia, trade secret misappropriation and violations of the Unfair Competition Law.  Soon after filing its complaint, TGG filed a motion for preliminary injunction, requesting the Court enjoin Defendants from accessing or using TGG's trade secret information. ("PI Mot.," ECF No. 23.)  The Court permitted TGG to engage in limited, expedited discovery for the purposes of its motion. (ECF No. 48.)  The Court granted the preliminary injunction motion in part.  But as relevant here, the Court denied the motion as it relates to Bubbly

– 1 –

Brands and Sash Group, finding that TGG had not sufficiently established that these Defendants misappropriated any trade secrets. (ECF No. 89, at 13.)

Now, Bubbly Brands and Sash Group move to dismiss TGG's claims against them, and in the alternative, move to compel arbitration. ("BB Mot.," ECF No. 65; "Sash Mot.," ECF No. 69.) TGG filed an opposition to the Motions, ("Opp'n," ECF No. 90), and both Defendants filed replies in support of their Motions, (ECF No. 91, ECF No. 92). The Court finds resolution of these Motions is suitable without the need for oral argument. *See* Civ. L.R. 7.1(d)(1). For the reasons discussed below, the Court **GRANTS** the Motions to Dismiss and **DENIES** the alternative Motions to Compel Arbitration.

## I. FACTUAL BACKGROUND

The following background information is taken from the Court's order on TGG's motion for preliminary injunction. (ECF No. 89.)

Plaintiff TGG provides management accounting and business advisory services for business clients. (PI Mot. at 1.) TGG was founded in 2006 by its current CEO Matt Garrett. Over time, TGG alleges Mr. Garrett and others developed what they call "The TGG Way"— "a proven set of accounting and finance best practices, processes and procedures, specially designed electronic tools, and other trade secrets, coupled with financial guidance, to ensure the financial health and success of TGG's clients." ("Garrett Decl.," ECF No. 23-1, ¶ 9.) The TGG Way "uses an objective and measurable system for implementing accounting best practices, quality control, and client and team communications. It is at the center of TGG's brand, and is what differentiates TGG from its competition." (PI Mot. at 4.) The TGG Way and TGG's trade secrets give TGG a competitive advantage. (*Id.*)

Defendant John Petraglia began working for TGG in January 2016. (Garrett Decl. ¶ 41.) By virtue of his role, Petraglia had access to some of TGG's confidential trade secret information. Petraglia left TGG in April 2019 and began working for Defendant Sayva Solutions, Inc. (*Id.* ¶¶ 43, 45.) Similarly, Defendant Megan Zerba

1  began working for TGG in June 2013, had access to trade secret information while
2  at TGG, and now also works for Sayva. Upon their departure, both Petraglia and
3  Zerba refused to sign TGG's Reminder of Confidentiality and Nonsolicitation form.
4  (*Id.* ¶¶ 44, 48.) On Sayva's website, Petraglia is listed as the CFO of Sayva's
5  Accounting Services and Zerba is listed as the Controller. (*Id.* ¶ 8.) TGG alleges
6  "Sayva provides outsourced professional services such as accounting, specialized
7  project consulting, and full-time recruiting services." (PI Mot. at 3.) TGG alleges
8  that as a result of Petraglia and Zerba's actions, Sayva has built an accounting
9  division that directly competes with TGG. (*Id.*)

10  After Petraglia and Zerba left, TGG hired the Berkeley Research Group to
11  conduct a forensic analysis of Petraglia's and Zerba's TGG-issued laptops. (Garrett
12  Decl. ¶ 62.) David Jiminez of Berkeley concluded that before Petraglia left TGG, he
13  connected a personal external USB storage device to his TGG laptop and accessed
14  various files. ("Jiminez Decl.," ECF No. 23-24 ¶ 12.) TGG analyzed the list of files
15  Petraglia accessed and concludes, "[t]he files . . . are sweeping and include many of
16  TGG's most valuable assets and proprietary trade secrets." (PI Mot. at 10.) Petraglia
17  also emailed himself various TGG materials. (*Id.*) Zerba similarly copied TGG files
18  onto a personal USB storage device before leaving TGG. (Jiminez Decl. ¶ 14.)

19  Defendants Bubbly Brands and Sash Group are former clients of TGG. After
20  Petraglia and Zerba left TGG, these former clients began disengagement from TGG.
21  TGG believes the entities are working with Sayva (through Petraglia and Zerba), who
22  is likely using TGG's trade secrets to perform accounting services for the clients.
23  Sayva agrees only that it has provided Bubbly Brands and Sash Group "periodic
24  accounting documents that reflect the actual financial state of their respective
25  companies" but asserts that neither it nor its employees have used TGG's proprietary
26  material. ("Buell Decl.," ECF No. 53-4, ¶¶ 22, 25–32.) Sash Group was working
27  with Sayva, and it states the only documents it "received from Sayva are typical
28  accounting documents reflecting the financial status of Sash Group." (ECF No. 52,

at 4–5.) Sash Group no longer works with Sayva or any other accounting firm. (*Id.* at 4.) Bubbly Brands also previously used TGG (specifically, Petraglia) for its bookkeeping and accounting services. ("Urbani Decl.," ECF No. 51-1, ¶ 11.) Bubbly Brands now receives that same service from Sayva. (*Id.* ¶ 13.)

## II.  LEGAL STANDARDS

### A.  Motion to Dismiss

A complaint must plead sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). "A claim has facial plausibility when the Omega pleads factual content that allows the court to draw the reasonable inference that the Monte Vista is liable for the misconduct alleged." *Id.*

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). However, the court is not obligated to "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Nor must the court accept allegations in the complaint that are contradicted by documents the complaint references. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citing *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v.*

*Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

### B. Motion to Compel Arbitration

The Federal Arbitration Act ("FAA") makes agreements to arbitrate "valid, irrevocable, and enforceable." 9 U.S.C. § 2. The FAA permits a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration. *Id.* "A party seeking to compel arbitration has the burden under the FAA to show (1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue." *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015)

## III. ANALYSIS

Bubbly Brands and Sash Group make similar arguments in their Motions, so the Court analyzes the Motions together.

### A. Motion to Dismiss

Defendants first move to dismiss TGG's misappropriation claims and UCL claim under Rule 12(b)(6).

#### 1. Misappropriation

The Court has already found that TGG has plausibly pled it owns trade secrets. (ECF No. 89, at 9–10.) As to the alleged misappropriation of those trade secrets, under the California Uniform Trade Secrets Act ("CUTSA"), misappropriation is defined as:

> (1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

> (2) Disclosure or use of a trade secret of another without express or implied consent by a person who:
>     (A) Used improper means to acquire knowledge of the trade secret; or
>     (B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was:
>         (i) Derived from or through a person who had utilized improper means to acquire it;
>         (ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use;
>         (iii) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
>     (C) Before a material change of his or her position knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or by mistake.

Cal. Civ. Code § 3426.1(b). Misappropriation under the Defend Trade Secrets Act ("DTSA") is nearly identical. *See* 18 U.S.C § 1839(5). In its prior order, the Court found:

> TGG has not sufficiently established that the former client Defendants are liable for misappropriation. At this point, the evidence shows that the former clients are too far removed from the problem. TGG has sufficiently established that Zerba and Petraglia acquired trade secrets and that Sayva is in possession of those trade secrets and is using certain documents or codes when performing accounting services for its clients. But the fact that Sayva may be using certain code or spreadsheets while performing accounting services for Bubbly Brands . . . and Sash Group does not mean that the [] former client Defendants are "using" the confidential information. If anything, someone else is using the documents for their benefit—inputting their financial information into the spreadsheets and sending the spreadsheets back to them. *Central Valley Gen. Hosp. v. Smith*, 162 Cal. App. 4th 501, 528–29 (2008) (holding that mere possession of a trade secret does not constitute misappropriation).

(ECF No. 89, at 13.) The Court went on to find,

> misappropriation does not stretch this far. Bubbly Brands sells bath bombs and essential oils . . . and Sash Group sells handbags. It is

> immaterial to these companies what code or Excel spreadsheets their accounting company uses to perform their bookkeeping. The clients are not "using" TGG's trade secrets; while they may technically be in possession of some of TGG's trade secrets, it is only because Sayva is using the trade secrets in its accounting of the clients' financial information. The Court cannot say that these Defendants have acquired or are using TGG's trade secrets under the misappropriation statute.

(*Id.* at 14.)

This conclusion remains true, and TGG's arguments to the contrary do not persuade the Court to find otherwise. TGG has not sufficiently pled that Bubbly Brands or Sash Group are using TGG's trade secrets as defined under the misappropriation statute. The Court **GRANTS** the Motion to Dismiss this claim. Because TGG has engaged in limited discovery and this case has progressed since TGG filed its complaint, it is possible that TGG can amend its complaint to state a misappropriation claim against Bubbly Brands and/or Sash Group. Thus, the dismissal is without prejudice.

## 2. Unfair Competition Law ("UCL") Claim

Defendants argue TGG's UCL claim is preempted by CUTSA and should therefore be dismissed. Under CUTSA, a party may recover for the "actual loss" or other injury caused by the misappropriation of trade secrets. Cal. Civ. Code § 3426.3. CUTSA defines misappropriation as (1) the improper acquisition of a trade secret or (2) the nonconsensual disclosure or use of a trade secret. *Id.* § 3426.1(b). A "trade secret" is information that derives "independent economic value" from its confidentiality and is subject to "efforts that are reasonable under the circumstances to maintain its secrecy." *Id.* § 3426.1(d). "CUTSA provides the exclusive civil remedy for conduct falling within its terms." *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 236 (2010), *disapproved on other grounds by Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 337 (2011).

Because CUTSA provides an exclusive remedy, courts have reasoned it displaces common law tort claims in two circumstances. First, CUTSA displaces

claims that are "based on the same nucleus of facts as the misappropriation of trade secrets claim for relief." *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 958 (2009). Stated differently, CUTSA displaces tort claims where they "do not genuinely allege 'alternative legal theories' but are a transparent attempt to evade the strictures of CUTSA by restating a trade secrets claim as something else." *Silvaco*, 184 Cal. App. 4th at 240. Second, CUTSA displaces "all claims premised on the wrongful taking and use of confidential business and proprietary information, even if that information does not meet the statutory definition of a trade secret." *ChromaDex, Inc. v. Elysium Health, Inc.*, 369 F. Supp. 3d 983, 989 (C.D. Cal. 2019).

In its UCL claim, TGG alleges that Defendants "have engaged in numerous unlawful, unfair, and fraudulent business acts or practices within the meaning of the Unfair Competition Law. Such acts and practices include, but are not limited to, misappropriating TGG's confidential and proprietary information." (Compl. ¶ 111.) TGG does not identify any other wrongful acts and practices beyond the misappropriation. Thus, TGG's UCL claim is plainly based, at least in part, on the same allegations as its misappropriation claim. TGG admits this. (Opp'n at 17 ("Although TGG's claims are not limited to trade secret claims, they arise out of similar conduct.").) Thus, the claim is preempted. *See PQ Labs, Inc. v. Yang Qi*, No. C 12-450 CW, 2012 WL 2061527, at *5 (N.D. Cal. June 7, 2012) (dismissing unfair competition claim with leave to amend because it was "premised upon the same nucleus of facts as the . . . cause of action for misappropriation of trade secrets"); *Sleep Sci. Partners v. Lieberman*, No. 09–04200–CW, 2010 WL 1881770, at *10 (N.D. Cal. May 10, 2010) (holding unfair competition claim "is preempted by CUTSA to the extent that it is based on the misappropriation of Plaintiffs' trade secrets"); *Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005) (dismissing unfair competition claims because they "are based on the identical facts alleged in its claim for misappropriation of trade secrets"). Beyond the

misappropriation, TGG does not specify any other conduct that could create a UCL violation, thus, at this point, the UCL claim is preempted and dismissed.

Because TGG alleges its UCL claim is based on unlawful, unfair, and fraudulent conduct that includes but is "not limited to" the misappropriation allegations, it is possible that TGG can amend its UCL claim so it is not preempted. Accordingly, the dismissal is without prejudice.

### B.     Motion to Compel Arbitration

Defendants alternatively argue that TGG's claims should be arbitrated.

In October 2019, TGG sent letters to Bubbly Brands and Sash Group "to clarify and confirm the course of action and scope of services." (ECF No. 65-3 at 23; ECF No. 69-3, at 14.) The letters were accepted and agreed to by Bubbly Brands and Sash Group; both letters are referred to herein as "the Agreements." The Agreements contain the following arbitration provision:

> Any and all controversies, claims, disputes or counterclaims arising out of, relating to or in connection with this agreement, its performance or its breach, whether involving disagreement about meaning, interpretation, application, performance, breach, termination, enforceability or validity and whether based in statute, tort, contract, common law or otherwise, shall be resolved by confidential final and binding arbitration.

(*See* ECF No. 69-3, at 18.)

TGG has initiated arbitration against Bubbly Brands and Sash Group. TGG contends that these Defendants have violated the non-solicitation provision of the Agreements, the conversion fee provision, the reasonableness provision, and the payment provision. (ECF No. 69-3, at 9.) Defendants claim the present dispute should also be arbitrated as this dispute falls within the scope of the arbitration clause.[1]

---

[1] The scope of the Agreements' arbitration clause is governed by federal law. *Tracer ResearchCorp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994).

1    "[W]hen parties intend to include a broad arbitration provision, they provide for arbitration 'arising out of or relating to' the agreement." *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 922 (9th Cir. 2011); *see also Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000). Similarly, the "in connection with this Agreement" language in an arbitration provision is interpreted broadly. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999). Where an arbitration clause is interpreted broadly, it reaches "every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract." *Id.* The "factual allegations need only 'touch matters' covered by the contract" and "all doubts are to be resolved in favor of arbitration." *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 624 n.13 (1985). However, "[a] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *Granite Rock Co. v. Int'l Broth. of Teamsters*, 561 U.S. 287, 297 (2010). The Supreme Court stated that the Court has "never held that [the federal policy favoring arbitration] overrides the principle that a court may submit to arbitration 'only those disputes . . . that the parties have agreed to submit.'" *Id.* at 302 (second alteration in original) (citations omitted).

Bubbly Brands first argues that its exposure to any trade secrets "was the result of and governed by" the Agreement. (BB Mot. at 21.) Certainly, Bubbly Brands and Sash Group would not be in this lawsuit and would never have received any documents or information from TGG in the first place if the parties had never entered into a contract with one another. But the argument that if the parties had not entered into an agreement in the first place, there would be no alleged misappropriation, has been rejected. *See Tracer*, 42 F.3d at 1295 (9th Cir. 1994) ("The fact that the tort claim would not have arisen 'but for' the parties licensing agreement is not determinative."); *see also Cape Flattery*, 647 F.3d 914 at 922 (noting that in *Tracer*,

1  "[w]e . . . rejected the defendants' argument that the dispute was arbitrable because
2  it would not have arisen but for the contract").

3  Bubbly Brands also argues that if TGG's misappropriation claims survive the
4  pleading stage, Defendants will assert defenses that are covered by the arbitration
5  provision, i.e., that the Agreement provides no duty of confidentiality, and thus, the
6  claims must be submitted to arbitration. (BB Mot. at 20.) Bubbly Brands cites no
7  authority for the proposition that a dispute is arbitrable because the defendant may
8  assert a defense regarding a provision that is missing from the parties' contract. Nor
9  would this be logical. *See Simula*, 175 F.3d at 721 (holding the "factual allegations
10 need only 'touch matters' covered by the contract containing the arbitration clause"
11 (emphasis added).)

12 In *Simula*, 175 F.3d 716, the Ninth Circuit, noting that the "standard for
13 demonstrating arbitrability is not high," held that an agreement to arbitrate "[a]ll
14 disputes arising in connection with this Agreement" must be interpreted broadly and,
15 thus, governed all of the plaintiff's claims of defamation, trade secret
16 misappropriation, antitrust violations, and violations of the Lanham Act. As to the
17 trade secret claim, the court held that the parties' nondisclosure agreements, a "key
18 part of" the contract, were the basis for the trade secret misappropriation claim. *Id.*
19 at 724–25. The nondisclosure agreements "expressly prohibited the misuse of
20 proprietary information, including . . . trade secrets." *Id.* at 725. "If [defendant] had
21 fully complied with the contract, as interpreted by [plaintiff], there would be no tort
22 claims. Thus [plaintiff's] claims will necessitate a review of the contracts between
23 [the parties] to determine whether [defendant] improperly breached the
24 nondisclosure agreements and misappropriated trade secrets." *Id.*

25 *Simula* is distinguishable. Here, the Agreements contain no nondisclosure
26 provision. Nor do they even refer to TGG's trade secrets, confidential information,
27
28

or its intellectual property.[2]  The Agreements also do not impose a duty of confidentiality on Bubbly Brands or Sash Group, and do not contain any provision that would serve as the basis for Defendants' alleged misuse of the trade secrets. *Contra Simula*, 175 F.3d at 725 (finding the nondisclosure provisions to be "significant" because plaintiff would not have dealt with defendant without them, so defendant only "gained access" to the confidential information because of the parties' contractual relationship); *OwnZones Media Network, Inc. v. Sys. In Motion, LLC*, No. C14-994JLR, 2014 WL 4626302, at *4 (W.D. Wash. Sept. 15, 2014) (finding that the parties' dispute over defendant's use of plaintiff's trade secret "turns in part on the contracts' nondisclosure clause" and therefore the dispute is arbitrable).

Further, TGG's allegations against Defendants are based on events that occurred after the parties' relationship ended. TGG states it is "not alleging that Bubbly Brands and Sash [Group] improperly acquired the trade secrets at issue while they were clients of TGG. Nor does TGG allege that the clients' financial information contained within the financial and accounting workbooks and templates are TGG's trade secrets." (Opp'n at 15.)

The Court finds that Defendants' alleged use of TGG's trade secrets (as a result of the actions of TGG's former employees taken after Defendants stopped being clients of TGG) constitutes "an independent wrong" and does not require interpretation of the Agreements or evaluation of either party's performance under the Agreements. *See Faegin v. LivingSocial, Inc*., No. 14cv00418-WQH-KSC, 2014 WL 5307186, at *4 (S.D. Cal. Oct. 15, 2014) (finding the trademark infringement claims do not "arise from or relate to" the parties' agreement). Any liability to Defendants for the misappropriation will arise from independent statutory provisions

---

[2] The Agreements do provide that TGG acknowledges it may receive some of the clients' confidential information and that TGG will not use or disclose that information. (*See* ECF No. 65-3 at 25.) But there is no portion of the Agreement that mandates that the clients not use or disclose TGG's confidential information.

which give TGG rights irrespective of the Agreements. In other words, the wrongfulness of any alleged trade secret misappropriation is determined by the misappropriation statute, not by whether or not the Agreements listed a duty of confidentiality. And because the UCL claims are premised on misappropriation, the same conclusion applies. *See Faegin*, 2014 WL 5307186, at *7 (holding because the trademark infringement and false advertisement claims did not "arise from or relate to" the agreement, "the unfair business practices claims grounded in the marked infringement and false advertisement claims are also held not to 'arise from or relate to' the Agreement").

The Court is mindful of the clear federal policy favoring arbitration. *See Simula*, 175 F.3d at 719 ("Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."). However, it is equally clear that "a court may submit to arbitration 'only those disputes . . . that the parties have agreed to submit.'" *Granite Rock Co.*, 561 U.S. at 302 (internal citations omitted) (alteration in original). The Court finds that the parties have not agreed to arbitrate TGG's misappropriation or UCL claims.

**IV.  CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Bubbly Brands' and Sash Group's Motions to Dismiss and **DENIES** their alternative Motions to Compel Arbitration. TGG is granted leave to amend and may file an amended complaint <u>on or before June 18, 2020.</u> If TGG does not file an amended complaint by this date, Bubbly Brands and Sash Group will be dismissed from this case.

**IT IS SO ORDERED.**

**DATED: May 28, 2020**

Hon. Cynthia Bashant
United States District Judge